# UNITED STATES DISTRICT COURT
for the
Middle District of Tennessee

| | |
|---|---|
| United States of America<br>v.<br><br>Juan Carlos Matute-Arias<br><br><br>*Defendant(s)* | )<br>)<br>) Case No.  25-mj-4339<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   September 12, 2025   in the county of   Davidson   in the
  Middle   District of   Tennessee  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code Sections 1326(a) | Illegal Re-entry of a Removed Alien |

This criminal complaint is based on these facts:

See Attached statement in support of complaint

☑ Continued on the attached sheet.

/s/ David Raissi
*Complainant's signature*

ATF SA David Raissi
*Printed name and title*

Sworn to me remotely by telephone, in compliance with Fed. R. Crim. P. 4.1.

Date:   09/17/2025

*[signature]*
*Judge's signature*

City and state:   Nashville, Tennessee     Hon. Alistair E. Newbern, U.S. Magistrate Judge
*Printed name and title*

## STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT

I, David Raissi, being first duly sworn on oath, state as follows:

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since June 2020. I am currently assigned to the Nashville Field Division. Prior to being employed by the ATF, I was employed by the Cobb County, Georgia, Police Department, beginning in 2007. While with the Cobb County Police Department, I worked in uniformed patrol for approximately four years. After my assignment in uniformed patrol, I worked in various capacities as an investigator, in Cobb County's multi-jurisdictional narcotics unit, in the Cobb County Police Department's Crimes Against Persons Division (Robbery/Homicide), and finally as a federally deputized Task Force Officer (TFO) for the ATF in the Atlanta Field Division.

2. In my law enforcement career, I have participated in numerous criminal investigations, including those that fall under the investigative jurisdiction of ATF, including, but not limited to, violations involving the unlawful manufacture, sale, and possession of firearms and controlled substances. Additionally, pursuant to Department of Homeland Security Directive, I have been granted authority to investigate, apprehend, and enforce immigration statutes and regulations. Pursuant to this directive, I have received training on immigration laws including, but not limited to, Illegal Re-entry of Removed Alien, under Title 8, United States Code, Section 1326. Additionally, I have assisted in numerous criminal immigration related investigations.

3. The following information contained in this statement is based on my training and experience, as well as information provided to me by other law enforcement officials (hereafter collectively referred to as "Agents"), and my review of investigative documents and other

1

materials. I have not included all the facts of the investigation and have only included the facts that are necessary to establish probable cause for the requested Criminal Complaint and arrest warrant. Any conversations contained herein are not verbatim and are only related in substance and part, except where a conversation includes quotations.

4. This statement is submitted in support of a Criminal Complaint for the arrest of Juan Carlos MATUTE-ARIAS for Illegal Re-entry of Removed Alien, in violation of Title 8, United States Code, Section 1326(a).

**PROBABLE CAUSE**

5. In 2024 and 2025, multiple agencies in the Western District of Kentucky, Southern District of Georgia, and Middle District of Tennessee, were investigating individuals who illegally acquired and/or trafficked approximately 150 firearms from the United States to Honduras. To date, 18 firearms have been seized, including 11 that were interdicted before they were trafficked to Honduras.

6. During this investigation, ATF Agents from Louisville traveled to Augusta, Georgia, on or about August 28, 2024, to contact two individuals involved in the firearms trafficking scheme. On or about August 29, 2024, Agents contacted with one of them, Juan Carlos MATUTE-ARIAS, at his place of employment. During his interview, he told Agents that he is in the United States illegally. He also told Agents details about the firearms trafficking conspiracy, gave Agents consent to search his residence, and mentioned that there was a firearm in his bedroom.

7. While agents were conducting the interview with MATUTE-ARIAS, additional Agents were monitoring his residence that she shared with A.P. The Agents observed A.P. enter

2

the residence and leave with a laundry basket. She had a blanket over the basket in an attempt to conceal what was in the basket.

8. After A.P. left, Agents ultimately searched the residences' bedroom and located a firearm box, but Agents did not locate the firearm itself. A sticker on the box identified that the box belonged to a Sig Sauer, Model: P320x5 pistol. Agents located one live 9-millimeter caliber round of ammunition along with a 50-round box of .22-millimeter caliber ammunition and two rifle magazines. In attempt to locate the missing firearm, MATUTE-ARIAS called his A.P. Agents were also attempting to locate and interview her. When Agents spoke to A.P., she said she took the Sig Sauer pistol from the residence but would bring it back.

9. Later that day, A.P. returned to the residence. Agents approached and spoke with her. She said that earlier that day, she received a phone call from MATUTE-ARIAS' employer saying that he was talking with law enforcement. A.P. felt like she needed to protect him and their children, so she took a firearm (the Sig Sauer, Model: P320x5 pistol) from the residence to throw it in the river. A.P. stated that she decided not to throw the firearm into the river. Instead, she brought it back to the residence and gave it to Agents. A.P. stated that she took the additional firearms in a laundry basket to one of her friend's houses. Eventually, MATUTE-ARIAS accompanied Agents to that residence, recovered the basket containing the firearms, and provided the firearms to Agents. Inside the laundry basket were three long guns including: (1) a Smith & Wesson, Model M&P 15-22, .22 caliber rifle; (2) a Radikal Arms, Model: MKX-3, 12-gauge shotgun; and (3) a Marlins Firearm Co., Model: 60SB, .22 caliber rifle. In addition to the firearms, there were also nine rifle magazines.

10. In January 2025, Immigrations Customs and Enforcement (ICE) deported MATUTE-ARIAS to Honduras. This removal was his third time being removed from the United States.

11. On or about September 10, 2025, the United States Attorney's Office in the Southern District of Georgia obtained an arrest warrant for A.P. for a violation of a federal firearms offense. On or about September 12, 2025, Agents set out to arrest A.P. on this warrant. Agents surveilled her residence on Elm Hill Pike in Nashville, Tennessee. When A.P. left the residence, Agents stopped her car and took her into custody. Following the arrest, Agents interviewed her. During the interview, Agents learned MATUTE-ARIAS illegally reentered the United States in February 2025. A.P. said MATUTE-ARIAS lived with her at her Nashville apartment. ATF searched law enforcement databases and reviewed photographs previously taken of A.P.'s apartment and identified MATUTE-ARIAS' vehicle.

12. ATF Agents also reviewed immigration documents and confirmed with ICE that MATUTE-ARIAS did not have permission or status to be in the United States. Agents returned to A.P.'s apartment and saw MATUTE-ARIAS. Agents confirmed his identity and arrested him.

13. During his arrest, Agents attempted to adjust his handcuffs and place a waist chain and leg shackles on him. MATUTE-ARIAS used this opportunity to try and flee on foot. However, Agents regained custody of him and transported him to an ICE facility in Nashville without further incident. Agents were able to confirm that MATUTE-ARIAS was the same individual interviewed in Augusta, Georgia, in 2024. ICE also confirmed MATUTE-ARIAS' identity through his fingerprints.

4

Case 3:25-cr-00223   Document 1   Filed 09/17/25   Page 5 of 6 PageID #: 5

14. A review of immigration records provided by U.S. Department of Homeland Security shows that MATUTE-ARIAS is not a United States citizen and has been previously deported three times. Since MATUTE-ARIAS' removal from the United States in January 2025, MATUTE-ARIAS has not received the express consent from the United States Attorney General or the Secretary of Homeland Security to re-apply for admission into the United States. Without such consent, MATUTE-ARIAS' presence in the United States is without authorization and illegal.

## CONCLUSION

15. Based upon the foregoing facts, I submit that there is probable cause to believe that Juan Carlos MATUTE-ARIAS committed the offense of Reentry of a Removed Alien, in violation of Title 8, United States Code, Sections 1326(a). Therefore, I request that a warrant be issued for his arrest.